UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE EILEEN FOGARTY
-----------------------------------------------------------x
EILEEN FOGARTY,

                Debtor-Appellant,                    **OPINION & ORDER**

    v.                                          **18-cv-3324**

BAYVIEW LOAN SERVICING LLC,

                Respondent,
-----------------------------------------------------------x

**GERSHON, United States District Judge:**

      Appellant Eileen Fogarty appeals the bankruptcy court's order dated May 29, 2018 in which the court held that respondent Bayview Loan Servicing LLC had not violated the automatic stay imposed by 11 U.S.C. § 362(a) when it conducted a foreclosure sale of the home in which appellant resided. Arguing that the bankruptcy court's order was erroneous, appellant seeks actual and punitive damages under 11 U.S.C. § 362(k)(1). For the reasons set forth below, the bankruptcy court's order is reversed, and the case is remanded for a determination of actual damages and consideration as to whether punitive damages are warranted and, if so, in what amount.

**I.    Background**

      **a.  The Foreclosure**

      At all relevant times, appellant resided at 72 Grandview Drive, Shirley, New York (the "Property"). The Property was owned in its entirety by 72 Grandview LLC ("LLC"), in which appellant held a 99 percent interest. Respondent held the note and mortgage on the Property, each of which were signed by the LLC. Appellant is not a maker or co-maker of the mortgage note, nor is she obligated on the note as a guarantor. The LLC defaulted on the note by failing to make

payments starting in January 2010.  On January 18, 2011, respondent initiated a foreclosure action in the Supreme Court of the State of New York, County of Suffolk ("State Court"), listing as defendants the LLC, the New York State Department of Taxation and Finance, and John Doe # 1 through #50.  On January 24, 2011, appellant was served a copy of the complaint as an occupant of the property.

On October 14, 2014, respondent moved for a default judgment in State Court against the named defendants and simultaneously sought to substitute appellant for John Doe #1 and to strike the rest of the John Doe defendants.  Respondent explained that appellant should be added as a defendant because "it has been determined that [appellant] Eileen Fogarty is a co-tenant in possession of a portion of the mortgaged premises."

On February 14, 2018, the State Court entered a judgment of foreclosure and sale against, *inter alia*, the LLC and appellant.  The judgment directed that "the purchaser or purchasers of such foreclosure sale be let into possession on production of the referee's deed or deeds."  It further provided that, while the premises would be sold subject to "[e]xisting tenancies and/or occupancies, if any," the named defendants "are forever barred and foreclosed of all right, title, claim, lien and equity of redemption in the said mortgaged premises and in each and every part and parcel thereof."  A foreclosure sale was scheduled for 9:45 a.m. on April 17, 2018.

Appellant filed a Chapter 7 bankruptcy petition on April 13, 2018.

On April 16, 2018, the day before the scheduled sale, appellant's attorney contacted counsel for respondent, arguing that, if the foreclosure occurred, it would violate the automatic stay under 11 U.S.C. § 362(a), which was triggered by appellant's bankruptcy filing.  Respondent's counsel replied that, because the LLC that owned the Property had not filed for bankruptcy, the

automatic stay did not apply, and the sale would proceed.  The Property was sold on April 17, 2018 to a third-party purchaser.

**b.  The Motion in Bankruptcy Court**

On May 11, 2018, appellant filed a motion in the bankruptcy court asking that it (1) find that respondent and its attorneys willfully violated the automatic stay; (2) vacate the foreclosure sale of the Property and declare such sale void *ab initio* and made in violation of the automatic stay;[1] and (3) award actual and punitive damages to appellant.  Appellant argued that the automatic stay applied because, as respondent was aware, she "had, at the very least, a possessory interest in the" Property.  On May 14, 2018, respondent filed its opposition to the motion as well as a cross motion for sanctions.

On May 15, 2018, the bankruptcy court, after hearing oral argument on appellant's motion, denied it from the bench.  Noting that appellant was "not an obligor under the note [and] has no ownership interest in the premises," the court stated that she had presented "no basis" to find that the automatic stay should stay the foreclosure action.  Bench Ruling Tr. at 16.  The court continued:

> For reasons unbeknownst to the Court, the LLC did not commence a bankruptcy filing, and if the LLC had commenced a bankruptcy filing, it would have invoked the automatic stay and the issues with respect to the foreclosure could have been dealt with in the context of the LLC's bankruptcy case.

Bench Ruling Tr. at 17.  The court issued a written decision on May 29, 2018 in which it referenced the reasons it set forth on the record and briefly discussed its reasoning (the "Order").  The court also denied respondent's cross motion for sanctions (which is not at issue on appeal).

This appeal followed.  I heard oral argument on the appeal on November 6, 2019.

---

[1] Appellant no longer pursues this relief.

3

## II.     Standard of Appellate Review

A district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*.  *See In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996).  "The scope of the automatic stay is a question of law subject to *de novo* review."  *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 206 (2d Cir. 2014).

## III.     Applicable Law

### a.     The Scope and Effect of the Automatic Stay

A bankruptcy petition operates as an automatic stay of, in relevant part, the "continuation, including the issuance or employment of process, of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of" the bankruptcy proceeding. 11 U.S.C. § 362(a)(1).  A bankruptcy petition also stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before" the bankruptcy proceeding was initiated.  *Id.* § 362(a)(2).  This "powerful protection" is "'one of the fundamental debtor protections provided by the bankruptcy code.'"  *In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014) (quoting *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998)).  The stay is effective immediately upon the filing of a bankruptcy petition.  *Id.*

"The scope of the stay is broad, encompassing 'almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate."  *Id.* (quoting 3 Collier on Bankruptcy ¶ 362.03 (16th Ed. 2014)).  The bankruptcy estate includes "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative."  *Chartschlaa v. Nationwide Mut. Inc. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (internal quotation marks omitted); *see* 11 U.S.C. § 541(a)(1).  "The right to own is a separate right from the right to possess or the right to occupy and yet, all are property of the estate."  *In re Salov*, 510 B.R. at 728.  Therefore,

4

critically, "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987).

The automatic stay may be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d).  A party taking action against a debtor "is required to move for stay relief if it wishes to enforce its rights against a Debtor protected by the United States Code and the federal bankruptcy laws, and it cannot bypass [a bankruptcy court's] jurisdiction merely because in [its] opinion cause exists to lift the stay." *In re Dominguez*, 312 B.R. 499, 507 (Bankr. S.D.N.Y. 2004).

### b.  Evictions under New York Real Property Actions and Proceedings Law

The existence and scope of a debtor's interest in property is determined by applying state law.  *Butner v. United States*, 440 U.S. 48, 55 (1979); *In re Rodgers*, 333 F.3d 64, 66 (2d Cir. 2003).  In New York, two separate proceedings allow a purchaser to obtain possession of property after a foreclosure sale: New York Real Property Actions and Proceedings Law ("RPAPL") § 221 and § 713(5).  4 Bergman on New York Mortgage Foreclosures § 33.01.   An eviction proceeding under § 713(5), which must be filed in courts that hear landlord-tenant cases, requires a two-step process: service of a 10-day notice to quit followed by exhibiting the deed to the person from whom possession is sought.  *Id.* § 33.02[2][a].

An eviction proceeding under § 221, often called the writ of assistance, "is rather different." *Id.*  The action may proceed in the court where the foreclosure was conducted and under the caption of the foreclosure action itself.  *Id.*  The statute does not require a notice to quit or presentation of the deed as a prerequisite to relief.  *Id.*  If the occupant withholds possession of the property, the

court may order the sheriff to evict the person in possession of the premises. *In re Salov*, 510 B.R. at 730.

Relief under § 221 is available only if the person from whom possession is sought was a party to the foreclosure action. *Tri-Land Properties, Inc. v. 115 West 28th St. Corp.*, 267 A.D.2d 142, 142 (1st Dep't 1999); *Green Point Sav. Bank v. Defour*, 162 Misc.2d 476, 478–79 (Sup Ct., Kings Cty. 1994). This is because due process requires notice and an opportunity to be heard before an individual's interest in property may be adversely affected by judicial process. *Nationwide Assocs., Inc. v. Brunne*, 216 A.D.2d 547, 547 (2d Dep't 1995). Thus, "it is well settled that the interest of an occupant of the mortgaged premises who is not served remains unaffected by the foreclosure." *Id.* (collecting cases); *accord In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983). In other words, "[e]nforcement of the writ of assistance against one who was not joined as a party to the proceeding would violate due process." *Nationwide Assocs.*, 216 A.D.2d at 547.

## IV. Discussion

### a. Whether the Automatic Stay was Violated

There is no dispute that the automatic stay was triggered by appellant's bankruptcy filing or that the stay applies to legal actions that affect appellant's possessory interest. The question on appeal is whether the bankruptcy court correctly concluded that the foreclosure sale did not affect appellant's possessory interest in the Property. The court reasoned that the sale was "solely in rem." Order at 2–3.

On the contrary, the foreclosure sale affected appellant's possessory interest and therefore it triggered the automatic stay. *See, e.g.*, *In re 48th Street* Steakhouse, 835 F.2d at 430. Accordingly, respondent was required to seek an order lifting the stay before proceeding with the sale. By failing to do so, respondent violated the stay.

The sale did not solely affect the interests of the LLC, as the bankruptcy court determined, because appellant was named as a defendant in the foreclosure action.[2]  As stated above, the State Court judgment set forth that the named defendants "are forever barred and foreclosed of all right, title, claim, lien and equity of redemption in the said mortgaged premises and in each and every part and parcel thereof."  And appellant's status as a defendant in the foreclosure proceeding permitted the Property's purchaser to evict appellant summarily through a writ of assistance under RPAPL § 221, as opposed to following the more onerous process mandated by RPAPL § 713(5).[3]

Eviction proceedings against a debtor, including those brought under § 221, implicate the automatic stay.  *See In re Jean-Francois*, 532 B.R. 449, 455 (Bankr. E.D.N.Y. 2015); *In re Salov*, 510 B.R. at 730–31.  Respondent recognizes that the stay would have applied to an eviction proceeding against appellant but argues that it did not apply to the foreclosure sale.  But the foreclosure sale effectuated a judgment that terminated appellant's rights in the property and was a prerequisite to beginning swift eviction proceedings against her.  The sale itself thus implicated

---

[2] Respondent argues that it named appellant as a defendant only "at the request of the Court in an effort to provide her with additional notice of foreclosure proceedings."  Resp. Br. at 6.  Appellant responds that there is no evidence supporting this assertion.  It does not matter why appellant was named as a defendant, only that she was named.  *See In re Ebadi*, 448 B.R. 308, 318 (Bankr. E.D.N.Y. 2011) ("[T]he fact that [the plaintiff in the foreclosure action] had to institute an *in personam* action against Debtor to preserve its right to seek a deficiency judgment does not change the fact that [the plaintiff] continued a prepetition *in personam* action against Debtor postpetition, in violation of the automatic stay.").

[3] The record from the bankruptcy proceedings indicates that, on October 4, 2018, the bankruptcy court granted the purchaser of the Property's motion to vacate the automatic stay in order to proceed with appellant's eviction.  In her motion, the purchaser argued that "the Debtor has neither a legal or equitable interest in the Property, but only a bare possessory interest, without any legal right to be an occupant or in possession *as a result of the pre-petition foreclosure sale of the Property* . . ." (emphasis added).  In other words, the purchaser relied on the fact that the foreclosure sale had already occurred (although she incorrectly described it as "pre-petition") to justify evicting appellant after the sale.  Although not known by the bankruptcy court at the time it denied appellant's motion, this fact further supports appellant's position here.

her possessory interest and was subject to the automatic stay.  *See In re Dominguez*, 312 B.R. at 502–03, 505–06 (automatic stay applied to a foreclosure judgment and sale of the debtor's property even though the foreclosure petition set her right to redeem the property over a year before she filed for bankruptcy).

   *In re Ebadi*, 448 B.R. 308, is instructive.  The court there found that the automatic stay was violated when a foreclosure sale proceeded against a property that was owned by a corporation that the debtor owned.  *Id.* at 314.  Critical to the court's analysis was the debtor's status as a named defendant in the foreclosure judgment, which arose because he had guaranteed payment of the corporation's debts on the mortgage.  *Id.*  The foreclosure sale, the *Ebadi* court thus explained, "constitute[d] a continuation of a judicial action against the debtor."  *Id.*  While the sale "was not the final step required in order to obtain a deficiency judgment" against the debtor, it was "a significant step in [that] process."  *Id.*  The same, of course, describes the impact of the foreclosure sale on appellant's possessory interest here.

   The bankruptcy court distinguished *Ebadi*, reasoning that the foreclosure there, unlike here, was both *in rem* and "*in personam* for the purpose of obtaining a personal judgment against the debtor (Ebadi) for any deficiency."  Order at 2.  But, as in *Ebadi*, "[t]he stay violation in this case is predicated on [the seller's] actions taken in furtherance of the Foreclosure Judgment against, *inter alia*, Debtor [herself]."  448 B.R. at 316.  That the debtor in *Ebadi* was a named defendant as a result of his status as guarantor while appellant here was a named defendant as a result of her possessory interest does not change the fact that, in both cases, the foreclosure sale affected the debtor's bankruptcy estate.[4]  Indeed, the crucial fact that appellant was named as a defendant in

---

[4] The debtor's status as a guarantor of the debt in *Ebadi* did result in that court's determination that the foreclosure sale violated not only § 362(a)(1), but also § 362(a)(6), which applies the automatic

the foreclosure action distinguishes this case from *In re Sheu*, 2009 WL 1794473 (Bankr. E.D.N.Y. June 16, 2009), a case on which the bankruptcy court relied for its conclusion that the automatic stay did not apply to the foreclosure sale at issue here.[5]

In sum, by proceeding against appellant as a defendant in the foreclosure action, respondent significantly lessened the barriers to evicting her from the Property after the foreclosure sale. As a result, appellant's possessory interests were at stake in the foreclosure sale and the automatic stay applied. The bankruptcy court erred in concluding otherwise.

### b.  Whether Appellant is Entitled to Damages

"[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  Willful means "any deliberate act taken in violation of a stay, which the violator knows to be in existence."  *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990); *accord In re Laskaratos*, 605 B.R. 282, 304 (Bankr. E.D.N.Y. 2019).  A "specific intent to violate the stay is not required; instead, general intent in taking actions which have the effect of violating the automatic stay is sufficient to warrant damages." *In re Laskaratos*,

---

stay to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the" bankruptcy petition.  448 B.R. at 314–15.

[5] Respondent highlights a concern raised by the bankruptcy court at oral argument: a ruling in appellant's favor would permit a single tenant who filed for bankruptcy in a hundred-unit apartment building subject to foreclosure to stay the entire foreclosure proceeding.  The bankruptcy court's concern, however, is not a mere hypothetical.  For example, in *48th Street Steakhouse*, the Second Circuit affirmed the lower court's finding that the sending of a lease termination notice by a landlord to I.S.H. Liquidating Corp., to which 48th Street's lease had been assigned, violated 48th Street's right to an automatic stay.  835 F.2d at 428.  "While it is true," the Court wrote, "that I.S.H. is an incidental beneficiary of our decision, this result is permissible where a non-debtor's interest in property is intertwined, as in the present case, with that of a bankrupt debtor.  If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *Id.* at 431.  However, such a concern can be addressed by a motion to lift the stay.

605 B.R. at 304–05 (internal citation and quotation marks omitted).  "Accordingly, the relevant inquiry is whether the creditor intended to take the action which violated the automatic stay – rather than whether the creditor intended to violate the stay." *Id.* at 305.

Respondent's actions were willful.  The day before the foreclosure sale, appellant's attorney notified respondent's attorney of appellant's bankruptcy filing and insisted that the sale not occur because of the automatic stay.  Respondent's attorney replied by making clear that the sale would proceed in spite of the bankruptcy petition.  This willful violation of the stay entitles appellant to actual damages.  The case is therefore remanded to the bankruptcy court for a determination as to the appropriate amount of actual damages as well as an evaluation as to whether appellant is entitled to an award of punitive damages and, if so, in what amount.

## V.     Conclusion

The bankruptcy court's order is reversed.  The case is remanded for a determination as to the amount of actual damages and consideration as to whether appellant is entitled to an award of punitive damages and, if so, in what amount.

**SO ORDERED.**

                                                           /S/
                                     **NINA GERSHON**
                                     **United States District Judge**

July 1, 2020
Brooklyn, New York